UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUSAN MOUW, individually and on behalf of all others similarly situated, | Civil Action No. 16-cv-2947-AET-DEA |
| | Hon. Anne E. Thompson, U.S.D.J. |
| Plaintiff, | |
| v. | |
| NATIONAL AUTO DIVISION, LLC, a New Jersey limited liability company, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT** |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Susan Mouw ("Plaintiff" or "Mouw) respectfully moves the Court for leave to file a First Amended Complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

The proposed First Amended Complaint is necessary so that Plaintiff can add allegations involving Defendant National Auto Division, LLC's ("Defendant" or "NAD") internal do not call procedures. Specifically, counsel in the sister case *Evans v. National Auto Division, LLC* (Case No. 15-cv-08714) was contacted by former employees of NAD who were willing to testify to NAD's do not call

procedures and training (or lack thereof). Counsel thereafter worked to obtain signed declarations from both former employees swearing on oath to NAD's demand that NAD requires customers to use highly specific "magic" language before placing them on NAD's internal do not call list and that NAD managers would publicly call-out and ridicule employees who, in management's opinion, had placed too many numbers on the internal do not call list. Such conduct necessitates the need for the requested amendment, is improper, and violates the TCPA.

This amendment is entirely consistent with the interests of justice, is requested in good faith, in no way acts to prejudice Defendant in any way, and is not an exercise in futility. Under Rule 15, leave to amend the pleadings is to be freely given, and the standards for granting leave are liberal. Accordingly, Plaintiff respectfully requests that the Court grant her motion and permit her filing of an amended complaint. Plaintiff's proposed First Amended Complaint is attached hereto as Exhibit A.

## II.   BACKGROUND FACTS AND PROCEDURAL HISTORY

A brief review of the facts and procedural history to date helps provide context to this request for leave to amend.

*NAD routinely makes unsolicited telemarketing calls in violation of the TCPA.*

NAD makes autodialed calls to cellphone users in which it tries to pitch the

users on buying extended automobile warranties. As discovery has revealed in Plaintiff Mouw's case, NAD obtained a lead containing her personal information in March 2016 from a lead broker called GotConsumer LLC. GotConsumer, in turn, obtained the lead (directly or indirectly) from Vaden Automotive, the operator of a website located at www.extendedchevroletwarranty.com. Mouw, whose cellular telephone number had been registered on the National Do Not Call Registry since July 1, 2014, started receiving NAD calls in March 2016.

As alleged in the initial complaint, "[b]eginning in March 2016, Plaintiff began receiving numerous calls on her cellular phone from someone trying to sell her an extended warranty on her car. The calls came from two telephone numbers: (313) 765-1134, and (419) 216-9670." (Dkt. ¶¶ 17-18.) During the very first call, Plaintiff told the caller she was not interested in purchasing a warranty. She also stated that she was on the Do Not Call Registry, and she requested not to be called again. (Dkt. ¶ 19.) Still, the calls continued, and on each call, Plaintiff told the caller to stop calling and that she had registered her phone number on the national Do Not Call Registry. (Dkt. ¶¶ 20-21.)

Discovery has revealed that NAD tried to autodial Mouw's cellphone number at least 22 times over an 8-day span (March 22, 2016 - March 30, 2016). There was no TCPA consent language on the extendedchveroletwarranty.com website at all. 47 C.F.R. § 64.1200(a)(3) (2013).

3

*In preparing for mediation, Counsel for Mouw and Evans notify NAD's lawyers of the testimony of former NAD employees and the internal do not call list claims*

As explained in Plaintiff's joint motion to consolidate this case with the *Evans* matter, in preparation for the mediation that had been previously scheduled in this case, counsel for Mouw and Evans had contact with former employees of NAD who were willing to testify to NAD's do not call procedures and training (or lack thereof). Counsel thereafter worked to obtain signed declarations from both former employees swearing on oath to NAD's demand that TRs and TSRs require customers use highly specific "magic" language before placing them on NAD's internal do not call list and that NAD managers would publicly call-out and ridicule TRs and TSRs who, in management's opinion, had placed too many numbers on the internal do not call list. Such chiding would occur during public meetings, where managers would speak from a raised platform before all of the TRs and TSRs, three times each day.

On December 8, 2016, attorney Glapion, counsel for Evans, sent a letter to counsel for National Auto Division that included both declarations. Without disclosing the complete contents of Glapion's letter—because it was sent in the context of the mediation process—one paragraph explained that the Parties needed to discuss, in advance of the mediation, a set of claims that had yet to be pled involving NAD's failure to comply with certain sections of 47 CFR § 64.1200(d), including claims with respect to all people who NAD called that NAD failed to: (a)

4

maintain a written do not call policy, available upon demand ((d)(1)); (b) to train NAD's employees on the existence and use of any internal do not call policy ((d)(2)); (c) to ensure that telephone numbers were placed on the list when requested ((d)(3)); (d) to honor do-not-call requests for a period of five years ((d)(6)); and (e) to disclose a call back number or address on the telemarketing calls ((d)(4)).

Plaintiff's counsel did not receive a response, despite attempts to follow up. The mediation thereafter fell apart when NAD did an about-face and indicated it was no longer interested in attempting to resolve this matter on a class basis.[1] Hence, NAD's counsel has known of the precise nature of these claims and the primary evidence to be offered initially in support since December 8, 2016— approximately **116 days** preceding the filing of this Motion for Leave to Amend. Moreover, Plaintiff's counsel informed NAD in a February 15, 2017 letter that Plaintiff intended to amend "the complaint to include claims that allege NAD failed to implement a policy honoring do-not-call requests and/or failed to train its personnel engaged in telemarketing". (*See* February 15, 2017 Discovery Letter,

---

[1] That the mediation was intended to proceed on a class-wide basis could not have been more clear: on November 29, 2016 counsel for NAD sent an email stating "As I said, if we can resolve this, my client would want everything resolved (both cases)." Consistent with this position, during the December 7, 2016 conference with Magistrate Judge Arpert the Parties told the Court that they had agreed to mediate both the *Mouw* case and the *Evans* cases on a class basis using Magistrate Judge Denlow. Defendant's abrupt 180-degree turn has never been explained.

attached hereto as Exhibit B, at p. 4.) Simply put, NAD and its counsel have known about this for months.

*Counsel for Mouw and Evans wait to amend pending a decision on consolidation*

To be sure, Mouw did not seek leave to amend previously due to efforts following the failed attempt at mediation to consolidate this case with the *Evans* matter. Counsel for both Mouw and Evans advised counsel for NAD repeatedly that their intention was to wait until the Court decided consolidation to amend, the idea being that if consolidation were granted the Parties would seek leave to file a Consolidated Amended Complaint.

On March 17, 2017, the Court heard oral argument on the motion to consolidate, and denied consolidation. (Dkt. 35).

*Following the Court's decision to deny consolidation, attempts to meet and confer fail to resolve this and other issues*

Subsequent attempts by the Parties to meet and confer to resolve this issue were unsuccessful. Despite knowing of the exact nature of these claims for months, NAD's counsel demanded to see a copy of the proposed amendment prior to indicating whether NAD objected. Counsel for Mouw provided a copy to counsel for NAD on March 31, 2017 and asked for a response by April 3, 2017 at 2:00 pm. NAD's counsel, Jeffrey Greenbaum, responded on April 3, 2017 via email and stated "[y]our proposed amendment is improper and we do not consent". As he did

6

not elaborate, it is unclear what attorney Greenbaum finds improper about Plaintiff's proposed amendment.

As explained below, the Court should grant Plaintiff Mouw leave to amend. Former employees have offered testimony that indicates NAD intentionally failed to record requests by consumers not to be called. Instead, NAD instructed its telemarketers to only honor requests that featured the "magic" words "put me on your do not call list." And NAD managers went so far as to publicly ridicule employees who placed "too many" names on the list. This blatantly violates the TCPA and NAD suffers no prejudice by the inclusion of such allegations and claims.

## III. ARGUMENT

Under Federal Rule 15, leave to amend pleadings "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 222 (1962) ("[Rule 15(a)(2)'s] mandate is to be heeded.")

"Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)). The Third Circuit, like other courts, has "consistently recognized, however, that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Id.* (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.

7

1993)); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (denial appropriate "only where [the amendment] would be prejudicial, there has been bad faith, or the amendment would be futile.") (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001)).

As explained below, there is no prejudice to NAD here, nor has there been any undue delay or bad faith. Finally, the amendment would not be futile.

### A.     NAD will suffer no prejudice—the claims are related to allegations in the initial Complaint that NAD failed to honor requests by Mouw and others to no longer be called and NAD has known of the amendment for months.

To demonstrate undue prejudice, the party opposing the motion to amend must show that "it will be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence' unless leave to amend is denied." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989); see also *Minter v. Prime Equip, Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) ("Courts have generally found undue prejudice where the amendment unfairly impacts the defendant's ability to prepare its defense.").

NAD cannot seriously contend it will suffer prejudice here. First, the original Complaint contained similar allegations, on behalf of cellphone owners whose numbers are registered with the national Do Not Call registry, charging NAD with violations of the "do not call" regulations set forth in 47 C.F.R. §

8

64.1200, *et seq.*, specific the failure to have a do not call policy and to properly train its staff. (Compl., Dkt. 1, ¶ 55.) The claims of the FAC simply expand such claims to cover *everyone* who NAD called on their cellphones at least thirty days after requesting that NAD stop calling—not simply those persons whose number had previously been registered on the National Do Not Call Registry. The policies, procedures, practices, and other information needed to prove the claim would be the same—the data required from Defendant is all that differs.

Second, and related, is that Defendant has known of Plaintiff's belief that such claims are included in the case since December 8, 2016, and was reminded of this in a February 15, 2017 letter (Ex. B). They can hardly claim surprise by the inclusion of such claims in an amended pleading. As such, NAD cannot show prejudice sufficient to deny leave to amend.

### B.    There has been no undue delay or bad faith—NAD was advised of the claims 116 days prior to the date of filing (and amendment was put off, with NAD's knowledge, until after the Court's ruling on consolidation).

There has been no delay in seeking to amend, either. Plaintiffs' Counsel raised the issue of seeking leave to amend back when the Parties were on track to mediate the case with Magistrate Judge Denlow. Amending during that process would have been antagonistic, so NAD's counsel was notified of the claims via a letter. Hence NAD's counsel was made aware 116 days prior to the filing of this Motion for Leave that such claims should be included.

The mediation was ultimately canceled when NAD did an about-face and decided it was no longer interested in mediating on a class basis. Once the mediation was canceled, counsel for Evans and Mouw worked to file a joint motion to consolidate. Amendments were not filed during that time because if consolidation was granted the Parties would need to amend their claims yet again as part of a consolidated amended class action complaint.

Consolidation was denied, however, on March 17, 2017. (Dkt. 35.) This Motion for Leave follows two weeks later. That is hardly undue delay or bad faith.

Finally, it should be noted that although the proposed first amended complaint adds another class, it actually *reduces* the total number of claims from 8 down to 5. As such, it's a more streamlined pleading than the original filing. Again, that is a far cry from an 11th-hour attempt to blow open the case with entirely new issues.

### C. The proposed amendment is hardly futile either: anyone who NAD called *after* the person requested stop has a claim challenging NAD's "magic language" do not call policy.

Finally, the proposed amendment isn't futile. Everyone who was exposed to NAD's rampant, systemic failures to honor do not call requests and who received additional calls on their cellphones at least 30 days after they said stop has a claim—not merely those cellphone owners who had previously registered their numbers on the national Do Not Call registry. The allegations would survive any

10

motion to dismiss. As such, there are no legitimate grounds for asserting that leave to amend should be denied based upon any claim of futility.

## IV. CONCLUSION

Plaintiff Mouw respectfully requests that the Court enter an Order granting her leave to file an amended complaint. NAD has known about Plaintiff's intention to amend the complaint for months and thus would suffer no prejudice. There also is no undue delay or bad faith present here—Plaintiff waited to seek leave to amend until after the consolidation issue was resolved. Finally, the amendment would not be futile—should it be proven that NAD systematically failed to honor do-not-call requests, liability is clear, and the allegations taken in a light most favorable to Plaintiff would survive a Rule 12(b)(6) attack.

*     *     *     *     *

Respectfully Submitted,

Dated: April 3, 2017

**SUSAN MOUW**, individually and on behalf of all others similarly situated,

By: <u>/s Stefan Coleman</u>
One of Plaintiff's Attorneys

Stefan Coleman
Law Offices of Stefan Coleman, LLC
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
law@stefancoleman.com

(877) 333-9427

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Ste. 300
Denver, Colorado 80210
(720) 213-0675

*pro hac vice

12

## CERTIFICATE OF SERVICE

I certify that on April 3 2017, I served this document on all counsel of record by filing the document with the Court using the Court's electronic filing system.

/s/ Stefan Coleman